UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

IN RE:  WILLIAM P. MCCUAN

_____

ROBERT E. TARDIF, as chapter
7 Trustee for the Bankruptcy
Estate of William P. McCuan,

      Appellant,

v.                      Case No: 2:16-cv-386-FtM-29

JILL  MCCUAN,  WILLIAM  P.
MCCUAN, as Co-Trustee of the
McCuan  Irrevocable  Trust,
IRA SUGAR, as Co-Trustee of
the  McCuan  Irrevocable
Trust,  K&M  DEVELOPMENT
CORPORATION,  INC.,  MDG
COMPANIES OF NAPLES, INC.,
MDG CAPITAL PARTNERS REALTY,
INC., MDG  CAPITAL  PARTNERS
FINANCIAL  CENTRE,  INC.,
LAKEFRONT  NORTH  INVESTORS,
LP, and MCCUAN IRREVOCABLE
TRUST,

      Appellees.

_____

**OPINION AND ORDER**

    This matter comes before the Court on the appeal of the

Bankruptcy Court's May 13, 2016 Order Granting Motion to Dismiss

[ ] With Prejudice (Doc. #1, pp. 5-6.) [1]  Appellant Robert E.

---

    [1] The Court will refer to the District Court docket as "Doc.",
the Bankruptcy case docket as "Bankr. Doc.", and the Adversary
Proceeding docket as "Adv. Doc.".  Copies of the relevant
documents were designated and transmitted by the Bankruptcy Court,
or are otherwise available through PACER and judicially noticed.

Tardif, Jr., the Chapter 7 Trustee for the Bankruptcy Estate of William P. McCuan (the Trustee or appellant) filed an Initial Brief (Doc. #13).   Appellees Jill McCuan (Mrs. McCuan), McCuan Irrevocable Trust, William P. McCuan (Debtor), as co-trustee of the McCuan Irrevocable Trust, Ira Sugar, as co-trustee of the McCuan Irrevocable Trust, K&M Development Corporation (K&M), MDG Companies of Naples, Inc., MDG Capital Partners Realty, Inc., MDG Capital Partners Financial Center, Inc. (collectively MDG), Lakefront North Investors, LP (Lakefront) (collectively appellees or appellee-defendants) filed an Answer Brief (Doc. #20).   On December 23, 2016, the Trustee filed a Reply Brief (Doc. #23).

For the reasons set forth below, the Bankruptcy Court's May 13, 2016 Order Granting Motion to Dismiss [ ] With Prejudice (Doc. #1, pp. 5-6) is reversed, and the case is remanded to the Bankruptcy Court for further proceedings consistent with this Opinion and Order.

## I.   Relevant Bankruptcy Court Proceedings

On January 29, 2014, William P. McCuan (Debtor) filed a Voluntary Petition under Chapter 7 of the Bankruptcy Code.   (Doc. #4-6, Bankr. Doc. #1.)   Robert E. Tradiff was appointed the Chapter 7 Trustee for the bankruptcy estate.

On January 29, 2016, the Trustee filed a Complaint to Avoid and Recover Fraudulent Transfers and for Related Relief (Doc. #4-11) (the Complaint) against appellee-defendants in an adversary

proceeding in the Bankruptcy Court.  The twelve-count Complaint sought to avoid and recover numerous allegedly fraudulent transfers made by Debtor which were asserted to be either "actual-intent fraudulent transfers" (Counts I, III, V, VII, IX, XI) or "constructive fraudulent transfers" (Counts II, IV, VI, VIII, X, XII).  The counts were brought pursuant to the Bankruptcy Code, 11 U.S.C. §§ 554, 550, and the Florida Uniform Fraudulent Transfer Act (FUFTA).  The Complaint alleged the following:

Debtor filed his Chapter 7 petition on January 29, 2014 (the Petition Date).  (Doc. #4-11, ¶ 2.)  Jill McCuan (Mrs. McCuan) is Debtor's non-filing spouse.  (Id., ¶ 4.)

In October 2008, Debtor defaulted on substantial obligations he owed to Regions Bank (id., ¶ 17), which were ultimately reduced to judgments exceeding $14.1 million by mid-2011 (id., ¶ 18).  Shortly before defaulting in late 2008, Debtor engaged in a series of transactions intended to hinder and delay Regions Bank's anticipated collection efforts, including moving his substantial asserts out of his individual name and into purportedly joint ownership with his wife (id., ¶ 19).

Prior to the Petition Date, Debtor individually owned an investment account at Brown Investment Advisory and Trust Company ending in number ***601-1 (the Brown Account), which had assets in excess of $1 million.  (Id., ¶ 20.)  In September 2008, one month before defaulting on the Regions Bank debt, "Mrs. McCuan's name

was added to the Brown Account for no consideration." (Id., ¶ 21.) The Complaint alleges that this was "a transparent effort by the Debtor to hinder and delay Region's collection efforts by converting his non-exempt asserts in the Brown Account into exempt tenancy by the entirety (TBE) assets jointly owned by the McCuans." (Id., ¶ 21.) The Complaint further asserts "[a]s to the Brown Account, however, any assertion of TBE ownership would fail as a matter of law because the addition of Mrs. McCuan to an account already owned by the Debtor did not have the unity of time and/or other unities required to establish TBE ownership." (Id., ¶ 21.)

After adding Mrs. McCuan's name to the Brown Account, Debtor began transferring substantial non-exempt [from the Trustee's perspective] assets from the Brown Account to other accounts. (Id., ¶ 22.) The Complaint specifically alleges the following such transfers were fraudulent: (1) on or about August 17, 2010, Debtor transferred over $500,000 from the Brown Account into an account in the names of Debtor and Mrs. McCuan (id., ¶ 23); (2) on or about September 3, 2010, Debtor transferred assets in excess of $1 million from the Brown Account to a Suntrust account held in the names of Debtor and Mrs. McCuan (id., ¶ 24); (3) on or about September 26, 2011, Debtor transferred $100,000 from the Suntrust Account to the McCuan Irrevocable Trust (id., ¶ 25); (4) on January 13, 2012, Debtor transferred $100,000 from the Suntrust Account to an account held by K&M Development Corporation, Inc. (id., ¶ 26);

and (5) on January 27, 2012, Debtor transferred $91,575 in cash and assets worth over $650,000 from the Suntrust Account to an account held by the McCuan Irrevocable Trust (id., ¶ 27).   The various counts of the Complaint seek to avoid the specific transfers and recover the value of the transfers for the bankruptcy estate, asserting that the transfers consisted of non-exempt property even though they came from the Brown Account because the Brown Account was never TBE property.

The Complaint also alleges fraudulent activity in connection with Debtor's line of credit at Suntrust Bank.   The Complaint alleges that in the four years prior to the Petition Date, five separate transfers totaling $628,000 were made from Debtor's line of credit to K&M, MDG, MDG Capital Partners, or Lakefront (id., ¶ 28).   Additionally, on or about May 18, 2011, Debtor used $1,922,489 from the Suntrust account, consisting of proceeds of the Brown Account, to pay down the line of credit (id., ¶ 29).   The effect of this was to funnel the $628,000 from the line of credit to entities owned or controlled by Debtor, and then pay down the line of credit with non-exempt Brown Account assets. (Id.)   The Complaint seeks to recover the funds Debtor drawn from the LOC and disbursed to defendants, but does not seek recovery of any funds that repaid the line of credit.

On March 2, 2016, appellee-defendants filed their Motion to Dismiss [ ] (Doc. #4-12) arguing, as relevant to this appeal, that

(1) the claims are barred by the statute of limitations because the transfers all fall outside the 4 year period; and (2) the claims against MDG Companies of Naples, Inc., MDG Capital Partners Realty, Inc., MDG Capital Partners Financial Centre, Inc. and Lakefront North Investors, LP fail because there were no transfers of assets or interests in an asset since a line of credit is not an asset.[2]

On April 28, 2016, after briefing was closed, the Bankruptcy Judge announced her decision granting the motion to dismiss and dismissing the Complaint with prejudice.  The Bankruptcy Court made the following findings relevant to this appeal:  (1) The Trustee was seeking to avoid allegedly fraudulent transfers of funds from the Brown Account (Doc. #4-20, p. 5); (2) "[i]n September 2008, the Brown Account was retitled from Debtor's individual name to Debtor and his wife as tenants by the entirety" (id., p. 6); (3) The Trustee alleges that 2010 and 2012 transfers from the Brown Account to other parties controlled by Debtor and to repay a line of credit with SunTrust Bank are avoidable as fraudulent transfers (id.); (4) Debtor filed his Chapter 7 petition on January 29, 2014, and therefore the four-year look-back period

---

[2] The other issues are: (3) a lack of personal jurisdiction over K&M Development Corporation or Lakefront North Investors, LP; and (4) the cause of action was barred by res judicata and the doctrine of claims splitting.

for avoidance of fraudulent transfers under Chapter 726, Florida Statutes, relates to transfers which took place after January 29, 2010 (id.); (5) there is another pending adversary proceeding (Adv. No. 14-402) which was removed from state court seeking supplementary proceedings under Florida Statute § 56.29 in which the Trustee joined as a party plaintiff (id.); and (6) under § 56.29 the Court may avoid certain transfers made within one year prior to a defendant being served with process, which in this case was transfers by Debtor after April 13, 2008 (id.).

The Bankruptcy Court recognized that the linchpin of the Trustee's efforts to avoid the transfers was paragraph 21 of the Complaint.  The Bankruptcy Court read a portion of paragraph 21 into the record:  "As to the Brown Account, however, any assertion of TBE ownership would fail as a matter of law because the addition of Mrs. McCuan to an account already owned by the Debtor did not have the unity of time and/or other unities required to establish TBE ownership."  (Doc. #4-20, p. 7.)  The Bankruptcy Court then stated:  "However, the Trustee's complaint does not seek a judicial declaration that the Brown account was not, after September 2008, owned by Debtor and his wife as TBE."  (Doc. #4-20, pp. 7-8.)

The Bankruptcy Court continued, stating that "[i]f the Brown account was owned as TBE in 2008, then the 2010 and 2012 transfers from the exempt account are not avoidable as fraudulent transfers."

(Id., p. 8.)   The Bankruptcy Court also stated that the Florida Supreme Court decision in Sneed v. Davis, 135 Fla. 271, 184 So. 865 (Fla. 1938), had held that a debtor "cannot commit fraud on his creditors by disposing of exempt property that the creditor had no legal right to look to for satisfaction of its claim." (Doc. #4-20, p. 8 (citing Sneed, 135 Fla. at 276)).

The Bankruptcy Court stated that it accepted as true the Trustee's allegations that Mrs. McCuan was added to the Brown Account in September 2008.   The Bankruptcy Court also took judicial notice of the allegation in the Amended Interpleader Complaint (Adv. No. 9:14-ap-402-FMD, Doc. #4-8, ¶ 17), in which "the Trustee alleges that on or about September 8, 2008, Debtor transferred the subject Brown account from his sole name to tenants by the entirety with his wife, Jill McCuan."   (Doc. #4-20, p. 8.)

The Bankruptcy Court found, contrary to the argument of the Trustee and a case from the Southern District of Florida,[3] that it was generally accepted in the Middle District of Florida that the addition of a spouse to an existing account satisfies the six unities for TBE ownership[4].   The Bankruptcy Court found that while

---

[3] The Trustee cited In re Aranda, No. 08-26059-BKC-PGH, 2011 WL 87237, at *1 (Bankr. S.D. Fla. Jan. 10, 2011).

[4] The Bankruptcy Judge cited In re Kossow, 325 B.R. 478 (Bankr. S.D. Fla. 2005); In re Caliri, 347 B.R. 788 (Bankr. M.D. Fla. 2006); In re Mathews, 360 B.R. 732 (Bankr. M.D. Fla. 2007), rev'd, 382 B.R. 526 (M.D. Fla. 2007); In re Stephenson, No. 6:11-BK-18901-ABB, 2012 WL 4896725 (Bankr. M.D. Fla. Oct. 4, 2012).

the 2010 and 2012 transfers alleged in the Complaint did fall within the statute of limitations for a Chapter 726 action, the claims were wholly dependent on finding that the September 2008 transfer from Debtor to himself and his wife as TBE was either a fraudulent transfer or ineffective to create the TBE ownership. (Id., p. 10.)  The Bankruptcy Court found that the Complaint sought neither the avoidance of the September, 2008 transfer, nor a judicial determination on the issue of TBE ownership.  (Id.)  The Bankruptcy Court held, as a matter of law, that the September 2008 transfer of the Brown Account from Debtor to himself and his wife as TBE was outside the four year reach-back period of Chapter 726[5] [and therefore could not be challenged], and that the account was owned as TBE as of September 2008.  As a result, the Bankruptcy Court found that the Trustee could not state plausible fraudulent transfer claims, and dismissed the complaint with prejudice without leave to re-plead.

As to the line of credit issue, the Bankruptcy Court noted that the Trustee's allegation was that the funds used to repay the line of credit originated from the Brown Account, and that "[i]n theory" a debtor's use of a line of credit to make transfers to

---

[5] A cause of action regarding a fraudulent transfer is extinguished unless brought within 4 years after the transfer was made, or if later, within 1 year after the transfer was or could reasonably have been discovered.  Fla. Stat. § 726.110.

third parties followed by a repayment of the balance with nonexempt assets could result in a fraudulent transfer scheme.   (Doc. #4-20, p. 12.)   However, based on its determination that the Brown Account was TBE exempt property, the Bankruptcy Court found that no transfer of nonexempt funds were used to repay the line of credit.   Therefore the motion to dismiss was granted on this issue as well.

Based on these findings, an Order Granting Motion to Dismiss [ ] With Prejudice (Doc. #4-2) was filed on May 16, 2016, dismissing the case in its entirety with prejudice.   Judgment was not directed or entered.   The Trustee filed a timely Notice of Appeal.

## II.   Standard of Review

The United States District Court functions as an appellate court in reviewing decisions of the United States Bankruptcy Court. 28 U.S.C. § 158(a); In re Failla, 838 F.3d 1170, 1174 (11th Cir. 2016).   The legal conclusions of the bankruptcy court are reviewed *de novo*, while findings of fact are reviewed for clear error.   In re Globe Mfg. Corp., 567 F.3d 1291, 1296 (11th Cir. 2009).

This appeal arises from the resolution of a motion to dismiss, and Fed. R. Civ. P. 12(b) applies in adversary proceedings.   Fed. R. Bankr. P. 7012(b).   The pertinent legal principles under Rule 12 are well established.   In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a

complaint as true and take them in the light most favorable to
plaintiff.  Erickson v. Pardus, 551 U.S. 89 (2007).  To survive
dismissal, the factual allegations must be "plausible" and "must
be enough to raise a right to relief above the speculative level."
Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  See also
Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010).

"A district court's discretion to dismiss a complaint without
leave to amend is severely restricted by Fed. R. Civ. P. 15(a),
which directs that leave to amend shall be freely given when
justice so requires."  Bryant v. Dupree, 252 F.3d 1161, 1163 (11th
Cir. 2001) (citations omitted).  "In the absence of any apparent
or declared reason — such as undue delay, bad faith or dilatory
motive on the part of the movant, repeated failure to cure
deficiencies by amendments previously allowed, undue prejudice to
the opposing party by virtue of allowance of the amendment,
futility of amendment, etc. — the leave [to amend] sought should,
as the rules require, be freely given."  Foman v. Davis, 371 U.S.
178, 182 (1962).

### III. Issues on Appeal

#### A. Ownership Status of Brown Account

The Court finds that the Bankruptcy Court erred in concluding,
in a motion to dismiss decision, that the Brown Account became TBE
property when Mrs. McCuan's name was added to her husband's
existing account in September 2008.  The existence of TBE status

simply cannot properly be determined at the motion to dismiss stage given the factual allegations in the Complaint, and the lack of any other properly considered record evidence which would support such a determination.

The nature of a bankrupt's interest in property is determined by state law. Butner v. United States, 440 U.S. 48, 55 (1979). It is undisputed that Florida law governs the determination of the ownership status of the Brown Account.

A transfer of property that is exempt from creditors may not be the subject of an action to avoid a fraudulent transfer under either the fraudulent transfer provisions of the Bankruptcy Code or the Florida Uniform Fraudulent Transfer Act ("FUFTA"). In re Anderson, 561 B.R. 230, 240-41 (Bankr. M.D. Fla. 2016). Under Florida law, property that is absolutely exempt cannot be reached by creditors, even if disposed of with a purpose to hinder, delay, or to defraud, because the creditors never had the right to look at such property in the first place. Sneed v. Davis, 135 Fla. 271, 276-77 (Fla. 1938). "[W]hen property is held as a tenancy by the entireties, only the creditors of both the husband and wife, jointly, may attach the tenancy by the entireties property; the property is not divisible on behalf of one spouse alone, and therefore it cannot be reached to satisfy the obligation of only one spouse." Beal Bank, SSB v. Almand & Assocs., 780 So. 2d 45, 53 (Fla. 2001). Additionally, property owned as tenancy by the

entireties by a bankruptcy debtor and a non-debtor is not part of the bankruptcy estate and cannot be reached by creditors, provided the property meets all requirements as a tenancy by the entireties under applicable state law.  In re Musolino, 391 F.3d 1295, 1296 (11th Cir. 2004) (Chapter 13); In re Hill, 197 F.3d 1135, 1139 (11th Cir. 1999) (Chapter 7).

In Florida, a married couple is entitled to own property jointly as tenancy by the entireties (TBE), as tenants in common, or as joint tenants with a right of survivorship.  Beal Bank, 780 So. 2d at 52-53.  In Florida, a tenancy by the entireties property "possesses six characteristics: (1) unity of possession (joint ownership and control); (2) unity of interest (the interests in the account must be identical); (3) unity of title (the interests must have originated in the same instrument); (4) unity of time (the interests must have commenced simultaneously); (5) survivorship; and (6) unity of marriage (the parties must be married at the time the property became titled in their joint names."  Beal Bank, 780 So. 2d at 52 (citations omitted).  See also In re Musolino, 391 F.3d at 1298.  "Should one of these unities never have existed or be destroyed, there is no entireties estate."  United States v. One Single Family Residence With Out Buildings Located at 15621 S.W. 209th Ave., Miami, Fla., 894 F.2d 1511, 1514 (11th Cir. 1990).

When property is held jointly by a husband and wife, it is presumed to be held as a tenancy by the entirety unless specifically delineated otherwise, "as long as the account is established by husband and wife in accordance with the unities of possession, interest, title, and time and with right of survivorship." Beal Bank, 780 So. 2d at 58.  In such a situation, a party contending marital property is held in another form of ownership must prove by a preponderance of evidence that a tenancy by the entireties was not created.  Id. at 58-59.

The Bankruptcy Court was correct that the plausibility of the Trustee's fraudulent transfer claims is dependent upon the Brown Account not being TBE property in and after September 2008.  If the Brown Account was owned as TBE as of that date, it was exempt property which was beyond the reach of Debtor's creditors and not a part of the bankruptcy estate, and thus there could be no fraudulent transfers of that property.

The Bankruptcy Court was also correct that the September 2008 transfer of ownership in the Brown Account from Debtor to Debtor and his wife could not be challenged by the Trustee because more than four years had passed.  The Trustee, however, was not challenging that transfer.  The Complaint did not assert the September 2008 transfer was fraudulent, but rather the Trustee asserted that the transfer did not create TBE property.

The Bankruptcy Court held, as a matter of law and contrary to the allegations in the Complaint, that the September 2008 transfer converted the Brown Account into TBE property.  Finding that no other allegations could change this conclusion, the Bankruptcy Court declined to allow the complaint to be amended and dismissed it with prejudice.  The Court finds that both components of this decision were erroneous.

The Bankruptcy Court stated that "[i]n September 2008, the Brown Account was retitled from Debtor's individual name to Debtor and his wife as tenants by the entirety." (Doc. #4-20, p. 6.)  If this was a finding of fact, the Bankruptcy Court violated the rule that required the facts of a Complaint to be viewed in the light most favorable to plaintiff.  The Complaint specifically alleged that Mrs. McCuan was added to the Brown Account on a date after the account was opened in her husband's name, and for no consideration.  The Complaint further alleged that the Brown Account did not become TBE property because all of the six unities were not present.  Nothing in these allegations support the Bankruptcy Court's contrary finding that the Brown Account was TBE property.

The Bankruptcy Court took judicial notice of the allegation in the Amended Interpleader Complaint (Adv. No. 14-402) in which the Trustee alleged that on or about September 8, 2008, Debtor transferred the Brown Account from his sole name to tenants by the

entirety with his wife.   (Doc. #4-20, p. 8.)   The Bankruptcy
Court could take judicial notice of court documents such as the
Amended Interpleader Complaint for the fact that it had been filed,
but not for the truthfulness of its contents.  <u>Lozman v. City of
Riviera Beach, Fla.</u>, 713 F.3d 1066, 1076 n.9 (11th Cir. 2013); <u>In
re Steeley</u>, 243 B.R. 421, 427 (Bankr. N.D. Ala. 1999) ("And while
this Court may not infer the truth of all of the facts in the
documents contained in those records, the Court may take judicial
notice of those records, and may take judicial notice of the
documents in the debtor's file." (citations omitted)).

    If the statement that "in September 2008, the Brown Account
was retitled from Debtor's individual name to Debtor and his wife
as tenants by the entirety" was intended as a legal conclusion, it
is not supported by the applicable law.   Further, assuming it is
possible to convert a husband's solely-owned property into TBE
property, the record properly before the Bankruptcy Court does not
establish that such a conversion took place.

    Florida law suggests that a transfer such as the one alleged
in this Complaint does <u>not</u> convert property into TBE property.
The Florida Supreme Court in <u>Beal Bank</u>[6] declined to overturn the
lower court's unanimous decision that a bank account "lacked the
unities of time and title and thus [was] not held as tenancy by

---

[6] 780 So. 2d at 52 n.6 & 62.

the entirety" when a husband opened the account alone, and later added his wife as co-owner.  Beal Bank, SSB v. Almand and Assocs., 710 So. 2d 608, 616 (Fla. 5th DCA 1998) (Harris, J., concurring in part and dissenting in part), overruled on other grounds by 780 So. 2d 45 (Fla. 2001).  Some Bankruptcy Courts have followed this approach.  In re Aranda, 08-26059-BKC-PGH, 2011 WL 87237, at *3 (Bankr. S.D. Fla. Jan. 10, 2011) (where Debtor opened a single-party account, subsequent addition of spouse as co-owner was not sufficient to create a tenancy by the entirety); Smart v. City of Miami Beach, Fla., 51 F. Supp. 3d 1299, 1303 (S.D. Fla. 2014) (same).

The Bankruptcy Court's reference in this case to the general practice in the Middle District of Florida is not convincing in the motion to dismiss context.  The best that can be said is that some bankruptcy judges in the Middle District of Florida have held, after an evidentiary hearing or on summary judgment, that a property interest acquired prior to marriage can be converted to an interest held as tenants by the entireties through an assignment executed subsequent to the marriage.  The effect of the dismissal with prejudice in this case was to determine that a property interest owned by one spouse will always be converted to an interest held as tenants by the entireties by the addition of the other spouse.  This is clearly not the law, since property can be held by a married couple in other ways.  Even when a presumption

of ownership by entireties exists, it is a rebuttable presumption. E.g., In re Kossow, 325 B.R. 478, 488 (Bankr. S.D. Fla. 2005) (the presumption of a TBE may be rebutted through extrinsic evidence, such as a signature card or a prenuptial agreement).

After a *de novo* review, the Court finds that a dismissal, with or without prejudice, was erroneous.

**B.  Line of Credit Issue**

"A party seeking to avoid a transfer as fraudulent must prove by a preponderance that any properties allegedly transferred were 'assets' of a transferor.  Exempt assets do not constitute transferrable 'assets' under § 726, because a transfer of such assets does not prejudice a transferor's creditors, who could not have obtained satisfaction from such assets before any transfer." In re Lankry, 263 B.R. 638, 644 (Bankr. M.D. Fla. 2001).  The line of credit issue was resolved by the Bankruptcy Court based upon its erroneous holding that the Brown Account was TBE property. That holding must be reversed and remanded to the Bankruptcy Court for reconsideration.

**C.  Other Issues**

Appellees argue that even if the Court concludes the dismissal with prejudice was incorrect, the Bankruptcy Court can be affirmed for two other reasons.  First, appellees argue that a Florida statute of repose bars the fraudulent transfer claims (an issue

which was not raised in the Bankruptcy Court)[7].   Second, appellees argue that the fraudulent transfer claims violated the doctrine against claim-splitting (an issue on which the Bankruptcy Court ruled against appellees).

As the undersigned has stated previously, a reviewing court can affirm the Bankruptcy Court on any legal ground, regardless of whether it was relied upon by that court.   In re Weeks Landing, LLC, 439 B.R. 897, 914 (M.D. Fla. 2010).   This "tipsy coachmen" doctrine, however, "does not permit a reviewing court to reverse on an unpreserved and unargued basis."   City of Riviera Beach v. J & B Motel Corp., 4D16-0174, ___ So. 3d ___, 2017 WL 1018521, at *2 (Fla. 4th DCA Mar. 15, 2017) (quoting Advanced Chiropractic & Rehab. Ctr. Corp. v. United Auto. Ins. Co., 103 So. 3d 866, 869 (Fla. 4th DCA 2012)).   As to the second ground, the Court agrees with the decision of the Bankruptcy Court.

Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. The Bankruptcy Court's May 13, 2016 Order Granting Motion to Dismiss [ ] With Prejudice (Doc. #1, pp. 5-6),

---

[7] The Eleventh Circuit "has repeatedly held that an issue not raised in the" lower court, "raised for the first time in an appeal will not be considered by this court."   Access Now, Inc. v. Sw. Airlines Co., 385 F.3d 1324, 1331 (11th Cir. 2004) (citations omitted).   The Court finds no exception applies to consider this first ground.

incorporating the oral findings made on April 28, 2016, is **reversed and vacated**, and the proceedings are **remanded** for further proceedings consistent with this Opinion and Order.

2. The Clerk shall enter judgment accordingly, transmit a copy of this Opinion and Order to the Clerk of the Bankruptcy Court, and close the file.

**DONE and ORDERED** at Fort Myers, Florida, this   29th   day of March, 2017.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

Copies:
Hon. Caryl E. Delano
Clerk, Bankr. Ct.
Counsel of Record